## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STAMAR RICHARD MILLER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-2738** |
| | : | |
| **TERRANCE BROADDUS,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**YOUNGE, J.**                                                          **AUGUST 25, 2023**

In a prior Memorandum and Order, *see Miller v. Broaddas*, No. 22-2738, 2022 WL 2986714 (E.D. Pa. July 28, 2022), the Court stayed this civil rights case brought by Stamar Richard Miller, who at that time was a pretrial detainee in custody at George W. Hill Correctional Facility.  The case was stayed under the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971) because Miller, who raised claims based upon an allegedly illegal arrest and search, had pending criminal charges lodged against him in the Court of Common Pleas of Delaware County involving the same arrest and search that undergirded the claims he raised in this case.  *See Commonwealth v. Miller*, CP-23-CR-459-2021 (C.P. Delaware); *Commonwealth v. Miller*, MJ-32121-CR-168-2020 (M.J. Delaware).

On June 26, 2023, the Clerk of Court received a letter from Miller (ECF No. 11) in which Miller asserted that his state court criminal charges in *Commonwealth v. Miller*, CP-23-CR-459-2021, ended in a guilty verdict.  A review of public records shows that the other case, *Commonwealth v. Miller*, MJ-32121-CR-168-2020, appears to have been *nolle prossed* as Miller asserts.  Miller's letter asked the Court to lift the stay so that this case can now proceed.  Miller also sought leave to amend his complaint to add additional defendants.  By Order filed on July 12, 2023 (ECF No. 13), the Court reopened the case and lifted the stay.  Miller was directed to

1

file an amended complaint to allege all claims on which he sought to proceed. Miller filed his Amended Complaint ("AC") on August 7, 2023 (ECF No. 16). For the reasons that follow, certain claims in the Amended Complaint will be dismissed with prejudice, other claims will be dismissed without prejudice, and the remaining claims will be served for a responsive pleading unless Miller opts to further amend his claims.

## I.      BACKGROUND AND FACTUAL ALLEGATIONS

By way of background, in his original Complaint Miller alleged that between May 17 and May 18, 2020, he was illegally stopped, searched and arrested by Defendants Officer B. Boerger and Officer Terrance Broaddus.[1] (Compl. (ECF No. 2) at 3-4.)[2] Miller asserted as claims in the original Complaint that his due process and search and seizure rights were violated, he was falsely imprisoned, wrongfully arrested due to a "fabricating story," and was defamed. (*Id*. at 6.)

In his Amended Complaint, which contains repetitive allegations and is comprised of the Court's preprinted form complaint for use by prisoners to file civil rights claims as well as handwritten pages, Miller names as Defendants former President Donald J. Trump, former Vice President Mike Pence, Chester Mayor Thaddeus Kirkland,[3] Chester Police Commissioner Steven Gretsky, Chester Police Major Katrina Blackwell, Tinicum Police Detective James Y. Simpkins, Chester Police Officers B. Boerger II and T. Broaddus, an unknown Chester police officer

---

[1] The spelling of Defendant Broaddus's name in Miller's Amended Complaint is not the same as the spelling in the original Complaint. The Court will use the new spelling and direct the Clerk to change the spelling on the docket.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system to all docket entries in this case.

[3] Miller misspelled Mayor Kirkland's first name. The Clerk will be directed to use the correct spelling on the docket.

("Chester Officer John Doe"), and former Pennsylvania Governor Tom Wolf.[4]  (AC at 4-6.)  All Defendants are named in their official and individual capacities.  (*Id*.)

Miller alleges in the Amended Complaint that he was held in custody on May 17, 2020 by the Chester Police Department after he was arrested for fleeing from Chester Police Officers Boerger, Broaddus and Doe.  (*Id*. at 8, 14.)  Non-defendant Officer T. Taylor, who is related to Miller, also arrived during the incident.  (*Id*.)  Miller was detained for a short period of time and then transported in a marked vehicle by Boerger.  (*Id*.)  Boerger drove him out of Chester and released him – an action that Miller claims was illegal — leaving him in Tinicum Township. (*Id*.)  Miller alleges that Boerger kidnapped him and denied Miller medical attention after Miller told him that he was hallucinating, having suicidal and homicidal ideations, and withdrawing from multiple controlled substances.  (*Id*. at 8-9, 13, 14-15.)  Miller alleges that he was unfamiliar with the area and had to find his way home on his own.  (*Id*. at 14.)  Miller alleges that he was not consciously aware of committing crimes that night or anything that happened after Boerger released him in Tinicum Township.  (*Id*. at 9, 14-15.)

Miller claims that he fell asleep at a baseball field in Tinicum but ended up back in Chester and, on the afternoon of Monday May 18, 2020, was arrested again by Broaddus on narcotics charges.  (*Id*. at 9, 15.)  He remembers walking in the area of 5th and 6th Streets in Chester and crossed under a train track when he noticed Broaddus in his marked vehicle.  (*Id*. at

---

[4] In the caption of the Amended Complaint, Miller lists the name of a second plaintiff, Daljitpal Singh.  Singh did not sign the Amended Complaint and there are no allegations concerning Singh's involvement in the claims that Miller presents.  Because Miller, as a *pro se* litigant, may not represent others in federal court, *see Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007), any claim purported to be brought on behalf of Singh will be dismissed without prejudice.

15.)  Broaddus made a U-turn, approached Miller, and Miller asked Broaddus why he was following him.  (*Id*.)  Broaddus asked to search Miller but Miller, suspecting Broaddus "was up to know [sic] good," fled from Broaddus on foot "for security reasons" because he "felt like [Broaddus] was harassing him" and coming after him because of the incident that happened the prior day.  (*Id*. at 9-10, 15-16.)  He eventually stopped running and surrendered to Boerger, Broaddus, and Doe.  (*Id*. at 16.)

Broaddus allegedly fabricated a story to charge Miller without probable cause and conducted an allegedly illegal search and seizure.  (*Id*. at 9, 16.)  Broaddus stated that he recognized Miller and observed him turn towards the street smoking what he knew from his training to be a home-made glass pipe commonly used to smoke crack.  (*Id*.)  Miller claims that Broaddus's criminal report of the incident is inconsistent with testimony he later gave at a preliminary hearing.  (*Id*. at 10, 16.)  He claims the discrepancy is evidence "for supervisor reliability" [sic] and motive why he was convicted of felony charges.  (*Id*. at 16.)

Defendants James Simpkins and Corporal Young[5] allegedly obtained and executed a search warrant on May 27, 2020 while Miller was incarcerated at George W. Hill Correctional Facility.  (*Id*. at 10-11, 16.)  As a result of the warrant, a buccal swab was obtained from Miller's mouth allegedly by force and threat.  (*Id*. at 11, 16-17.)  Miller objected to the search and asked to speak with counsel due to his allegedly unlawful arrest and detention.  (*Id*.)  He was threatened by Simpkins that if did not comply the swab test would be done with force.  (*Id*.)  When Miller attempted to leave the area, Young put his hands around Miller's neck and began to choke him while Simpkins forcefully put the swab in Miller's mouth.  (*Id*.)  Miller claims the test

_____

[5] Corporal Young is not listed as a Defendant in the caption of the Amended Complaint. However, construing Miller's allegations liberally, the Court will treat Young as a named Defendant.

was performed under duress, threat of force, false imprisonment and psychological torture.  (*Id*.)

Miller asserts that the swab evidence was collected during an illegal detention, the evidence was

"derived from a case that was granted nolle prosequie [and] all of the evidence seized should be

inadmissible under the exclusionary rule."  (*Id*. at 17.)

According to Miller, the remaining Defendants "are witnesses that conspiraled [sic] to the

defendants acting out of proper protocol and procedure of Department policies," thereby

violating his constitutional rights.  (*Id*. at 12.)  He appears to allege that the swab test also lead to

his being convicted on felony charges for involuntary deviate sexual intercourse and related

charges in *Commonwealth v. Miller*, CP-23-CR-459-2021 (C.P. Delaware).  (*Id*. at 18.[6])

Miller seeks money damages on his claims.  (*Id*. at 17.)  He also seeks a determination

that he is entitled to immediate release from custody because the swab evidence was obtained in

violation of his rights.  Miller appears to seek to have this case "combined" with his state court

criminal case because the Defendants violated his constitutional rights by making a false report

of probable cause to stop Miller, by illegally detaining him, and by collecting the buccal swab

evidence.  (*Id*. at 18.)

As the Court previously noted, a review of publicly available records at the time the

Court screened Miller original Complaint indicated that Miller was arrested on May 18, 2020 by

Tinicum Township Police on indecent deviate sexual intercourse, sexual assault, burglary,

kidnapping, unlawful restraint, and related charges.  *See Commonwealth v. Miller*, CP-23-CR-

459-2021 (C.P. Delaware).  While the charges were pending when the Court screened Miller's

original Complaint, a review of the state court docket now reflects that Miller was found guilty

---

[6] Miller mentions the docket numbers of other state criminal cases, but a review of public records does not provide information on the docket numbers he lists.

by a jury on March 23, 2023 of two counts of indecent deviate sexual intercourse, sexual assault, burglary, reckless endangerment, false imprisonment, unlawful restraint, and burglary.  He was sentenced on August 11, 2023 to an aggregate term of 10-20 years of incarceration.

The Court also previously noted also that public records indicated Miller was also arrested by Chester Police on May 18, 2020 on charges of possession of drug paraphernalia and controlled substances, public drunkenness, disorderly conduct, and resisting arrest.  *See Miller*, 2022 WL 2986714, at *2 (citing *Commonwealth v. Miller*, MJ-32121-CR-168-2020).  After an arraignment on May 18, and preliminary hearings on June 2, June 9, July 7, and July 8, 2020, those charges were held for court.  *Id*.  Defendant Broaddus was listed as the arresting officer. *Id*.  That docket now appears to have been expunged.  Because, as Miller asserts, his criminal charges related to the Chester stop, search and arrest based on possession of drug paraphernalia, public drunkenness, disorderly conduct, and resisting arrest appear from the face of the state court docket to have been *nolle prossed*, the Court will proceed to conduct the required statutory screening of the claims pursuant to 28 U.S.C. § 1915.

II.     **STANDARD OF REVIEW**

The Court previously granted Miller leave to proceed *in forma pauperis*.  Accordingly, § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as

true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Miller is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.  DISCUSSION

Miller alleges civil rights claims against each Defendant.  The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Release from Custody

In addition to money damages on his claims, Miller also seeks a determination that he is entitled to immediate release from custody because the swab evidence was obtained in violation of his rights and he wants to have this case "combined" with his state court criminal case because the Defendants violated his constitutional rights by making false report of probable cause to stop Miller, by illegally detaining him, and by collecting the buccal swab evidence.  (Am. Compl. at 18.)  The Court cannot grant this relief.

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."

7

*See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  This means that Miller cannot pursue his request for release in a civil rights action such as this one and, rather, must file a *habeas* petition after exhausting state remedies if he seeks release on the basis that his confinement is unconstitutional.  *See generally* 28 U.S.C. § 2254.  Accordingly, Miller's claims seeking release from confinement will be dismissed.  *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim.  Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").

The Court also cannot combine Miller's federal civil rights claims with his ongoing criminal case, now in its post-sentencing phase.  Miller must pursue any argument that his convictions for sexual offenses were obtained improperly through the courts of Pennsylvania using the normal appellate and post-conviction procedures available to him.  Once he has exhausted those remedies, he may seek federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

**B.      Claims Against President Trump, Vice President Pence, and Governor Wolf**

Miller has named as Defendants former President Trump, former Vice President Pence, and former Governor Wolf.  All are named in their individual and official capacities but Miller states no factual allegations concerning them.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining in the *Bivens* context involving a federal actor defendant that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution").  Because Miller does not allege these Defendants were personally involved in the incidents in Chester and Tinicum, the claims against them are dismissed.[7]

### C.    Official Capacity Claims

Miller has named each of the remaining Defendants in both their official and individual capacities.  However, Miller may not have understood the implication of naming the Defendants in their official capacities.  Claims against municipal employees (such as all of those named here) who are named in their official capacity are indistinguishable from claims against the governmental entities that employs the Defendant, here Chester and Tinicum Township.  *See*

---

[7]  The official capacity claims against President Trump, Vice President Pence and Governor Wolf are also subject to dismissal.  A *Bivens* action against federal officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."  *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Accordingly, the claims against President Trump and Vice President Pence in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds.  *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

The official capacity claim against Governor Wolf is actually a claim against the Commonwealth of Pennsylvania.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  But the Commonwealth is not a "person" as that term is used in § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989), and is also shielded by absolute immunity under the Eleventh Amendment.  *Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Accordingly, all official capacity claims against these Defendants are also dismissed.

*Graham*, 473 U.S. at 165-66.  Thus the official capacity claims against the employees of Chester and Tinicum Townships are actually claims against those municipalities.

To plead a plausible basis for liability against municipal entities such as Chester and Tinicum Township under § 1983, Miller must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations and alterations omitted).  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to

deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

> As the United States Court of Appeals stated,
>
> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Miller appears to assert official capacity/failure to train claims against Mayor Kirkland, Commissioner Gretsky, and Major Blackwell, as well as non-specific official capacity claims against Officers Boerger, Broaddus, Doe, Detective Simpkins, and Corporal Young. He claims that the Defendants who were not personally involved in the Chester arrest and Tinicum search incidents "are witnesses that conspiraled [sic] to the defendants acting out of proper protocol and procedure of Department policies," thereby presumably violating his constitutional rights. (Am. Compl. at 12.) These allegations fail to allege a plausible *Monell* policy claim since Miller fails to allege a specific policy that violated his rights. In other words, Miller has failed to allege that the Defendants had knowledge of similar unlawful conduct in the past, failed to take precautions

against future violations, and that this failure, at least in part, led to Miller's injury. Miller's sole allegation about a policy merely paraphrases the standard for municipal liability, and is too vague and generalized to support a plausible claim. He has also failed to allege any facts to state a plausible failure-to-train policy claim. Accordingly, the official capacity claims will be dismissed.

### D.    Claims Against Supervisors

Miller has named Chester Mayor Kirkland, Chester Police Commissioner Gretsky, and Chester Police Major Blackwell in their individual capacities. Miller appears to have included them as Defendants because they hold supervisory positions in Chester. The claims against them are not plausible.

Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). There are, however, "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk

existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury."  *Id.*  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Miller fails to allege that Mayor Kirkland, Commissioner Gretsky, or Major Blackwell were personally involved in the incidents he describes.  He also fails to allege that these Defendants established a policy with deliberate indifference to the consequences that resulted in a violation of Miller's rights.  Accordingly, his claims against these Defendants are dismissed.

### E.    Claims Against Detective Simpkins and Corporal Young

The claims against Simpkins and Young involve their taking a buccal swab from Miller while he was incarcerated at George W. Hill Correctional Facility.  Miller concedes that they

obtained a warrant to take the swab.  He alleges, however, that they used force in their attempt to

obtain the swab and that the use of force coerced him into compliance.  Specifically, when Miller

objected to the search and asked to speak with counsel, Simpkins threatened to use force to

obtain the sample and, when Miller attempted to leave the area, Young put his hands around

Miller's neck and began to choke him while Simpkins did the swab.  Miller claims the test was

performed under duress, threat of force, false imprisonment and psychological torture.  The

Court understands Miller to be asserting two different claims against Simpkins and Young, an

excessive force claim and an illegal search and seizure claim.

### 1.      Search and Seizure Claim

The Fourth Amendment provides "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and

no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." US.

CONST. amend. IV.  The United States Court of Appeals for the Third Circuit has explained that

"[a] section 1983 plaintiff who challenges the validity of a search warrant by asserting that law

enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-

part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)."

*Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).  At the statutory screening stage, under

the *Franks* test, a plaintiff must allege facts "(1) that the affiant knowingly and deliberately, or

with a reckless disregard for the truth, made false statements or omissions that create a falsehood

in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to

the finding of probable cause." *Sherwood*, 113 F.3d at 399 (applying the test at the summary

judgment phase).  Miller concedes that Simpkins and Young obtained a warrant authorizing them

to procure the buccal swab.  He asserts no facts that would support a plausible claim that the Defendants deliberately or with reckless disregard for the truth, made materially false statements to procure that warrant or that probable cause was otherwise lacking.  Accordingly, the Fourth Amendment search and seizure claim is dismissed.

### 2.    Excessive Force

The excessive force claim will be served.  To state a § 1983 due process claim based on excessive force, a pretrial detainee, like Miller at the time of the incident, must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  His allegation that Young choked him and Simpkins obtained the swab from his mouth by force is sufficiently plausible to satisfy the screening stage of the litigation.

### F.    Claims Against Broaddus and Boerger

Miller alleges that Defendants Broaddus and Boerger violated his constitutional rights when they stopped, searched and falsely arrested him based on a fabricated story.  An officer without a warrant or even facts rising to the level of probable cause may conduct a "*Terry* stop" – a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  Under this "reasonable suspicion" standard, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion."  *Terry*, 392 U.S. at 21.  If the initial stop is unlawful, everything that flowed from the stop, including the subsequent search of Miller, would also be unlawful under *Terry*.  *See Johnson v. Anhorn*, 416 F. Supp. 2d 338, 359 (E.D. Pa. 2006).

A false arrest is one made without probable cause.  *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006); *Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995) ("'The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.'") (quoting *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988)).  "Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'"  *Stetser v. Jinks,* 572 F. App'x 85, 87 (3d Cir. 2014) (quoting *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir. 1990) (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9 (1979))).  "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest. . . ."  *Virginia v. Moore*, 553 U.S. 164, 178 (2008).  Finally, the elements of a § 1983 claim for unreasonable search and seizure are (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances.  *Brower v. Cty. of Inyo*, 489 U.S. 593, 597-99 (1989).

Miller claims that the criminal charges arising from Broaddus's alleged discovery of drug paraphernalia in his search of Miller have been *nolle prossed*.  Accepting as true Miller's assertion that Broaddus initiated the stop not because of any reasonable suspicion of current criminal activity but because of a previous encounter Miller had with him hours before, and that Broaddus fabricated the story about seeing Miller use a crack pipe, the Court will serve Miller's claims based on the stop, search, and resulting arrest against Defendants Broaddus, Boerger, and Chester Officer John Doe.

G.     **Deliberate Indifference and Related Claims**

Miller asserts as an additional claim that Defendant Boerger violated his constitutional

rights by failing to provide medical care and by abandoning him after he transported him to

Tinicum Township and left him there even though Miller told Boerger that he was hallucinating,

feeling homicidal and suicidal, withdrawing from substances, and needed medical attention.  He

also alleges that Boerger kidnapped him.  The Court understands Miller to be asserting

constitutional claims against Boerger based on deliberate indifference to his serious medical

needs, as well as a "state created danger" claim, and a federal or state law kidnapping claim.

Any attempt to raise a kidnapping claim under either federal law or state law is not

plausible.  There is no private right of action pursuant to the federal kidnapping statute, 18

U.S.C. § 1201.  *Elliott v. Gehret*, No. 20-6331, 2022 WL 245195, at *4 (E.D. Pa. Jan. 25, 2022)

(citing *O'Neil v. Beck*, No. 04-2825, 2005 WL 2030319, at *1 (M.D. Pa. Aug. 4, 2005).  There is

also no private right of action under the Pennsylvania kidnapping statute.  *Bane v. City of*

*Philadelphia*, No. 09-2798, 2009 WL 6614992, at *12 (E.D. Pa. June 18, 2010) ("In

Pennsylvania, the offense of kidnapping set forth in 18 P.C. § 2901, et seq., does not create a

private right of action.").  Accordingly, any attempt to raise a kidnapping claim is dismissed with

prejudice.

A deliberate indifference claim arising in the context of an arrest is governed by

Fourteenth Amendment.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  Specifically,

deliberate indifference to the medical needs of an arrestee is a violation of the Fourteenth

Amendment right to due process.  *Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014)

(citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Natale v. Camden Cnty.*

*Corr. Fac.*, 318 F.3d 575, 582 (3d Cir. 2003); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636-

37 (3d Cir. 1995)).  The due process rights of a person who has been injured while being apprehended by the police are at least as great as the Eighth Amendment protections available to a convicted prisoner.  *See City of Revere*, 463 U.S. at 244; *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*) (pretrial detainee's claims of deliberate indifference to serious medical needs under the Fourteenth Amendment are analyzed under the standard for similar claims under the Eighth Amendment); *see also Peters v. Brown*, 793 F. App'x 118, 123 (3d Cir. 2019) ("We have found it constitutionally sufficient . . . to analyze pretrial detainees' claims of inadequate medical care under the familiar deliberate indifference standard."); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address plaintiff's argument that an objective unreasonableness standard instead of the deliberate indifference standard applies to claims raised by pretrial detainees based on issues related to medical care).

"To demonstrate deliberate indifference to medical needs, a plaintiff must show (i) a serious medical need, (ii) acts or omissions by law enforcement officials that indicate deliberate indifference to that need, and (iii) a causal connection between the indifference and the plaintiff's injury."  *Smith*, 553 F. App'x at 177 (internal citations and quotations omitted).  The United States Court of Appeals for the Third Circuit has held that "[d]eliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'"  *Id.* (quoting *Natale*, 318 F.3d at 582).  Deliberate indifference exists where there is "objective evidence that [a] plaintiff had serious need for medical care" and the need was ignored or delayed for non-medical reasons.  *Id.*  With respect to an arrestee, "a police officer [must] . . . provide medical care to an individual who was injured during the course of an arrest when the need 'is so obvious that a reasonably trained officer would recognize the necessity for attention.'"  *Klein v. Madison*, 374 F. Supp. 3d 389, 423 (E.D. Pa. 2019) (quoting *Bornstad ex*

*rel. Estate of Bornstad v. Honey Brook Twp.*, No. 03-822, 2005 WL 2212359, at *19 (E.D. Pa. Sept. 9, 2005), *aff'd sub nom.* 211 F. App'x 118 (3d Cir. 2007)).  Moreover, a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  Miller's allegations that Boerger abandoned him in Tinicum Township even though Miller told Boerger that he was hallucinating, feeling homicidal and suicidal, withdrawing from substances, and needed medical attention is sufficient for purposes of statutory screening to allege a plausible deliberate indifference claim.  Accordingly, the Court will direct service of this claim as well.

The Court will also direct service of Miller's state created danger claim against Boerger. A state created danger claim may be plausible where "the state acts to *create or enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles*, 456 F.3d 298, 304 (2006) (emphasis in original) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir.1996)).  To allege a plausible "state-created danger" theory, a plaintiff must allege the following four elements:  (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) the plaintiff was a foreseeable victim, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered him more vulnerable to danger than had the state not acted at all.  *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir.2006)).  Accepting as true Miller's allegations that Boerger transported him to Tinicum and abandoned him there while Miller was hallucinating, homicidal and suicidal, withdrawing, and

needed medical attention, he has stated a plausible claim sufficient for purposes of statutory screening, and this claim will be served as well.

## IV.    CONCLUSION

For the reasons stated, at this time the Court is prepared to serve the following claims in the Amended Complaint for a responsive pleading:  (1) the individual capacity claims against Defendants Broaddus, Boerger, and Chester Officer John Doe for violating Miller's constitutional rights during the investigative stop, search, and arrest based on a possession of drug paraphernalia; (2) the individual capacity claim against Boerger based on deliberate indifference to Miller's medical needs and the "state created danger" claim; and (3) the individual capacity excessive force claim against Simpkins and Young.  Miller's claims seeking release from custody, his request to combine this case and his state court criminal case, his kidnapping claim, and his claims against President Trump, Vice President Pence and Governor Wolf in their individual and official capacities are dismissed with prejudice.

Miller's official capacity claims against all of the remaining Defendants, his individual capacity claims against Chester Mayor Kirkland, Chester Police Commissioner Gretsky, and Chester Police Major Blackwell, and his Fourth Amendment search and seizure claim against Simpkins and Young are dismissed without prejudice.  Miller will be granted the option of proceeding only on the individual claims that have passed statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B), or file a second amended complaint if Miller believes he can cure the defects identified in the claims dismissed without prejudice.  An Order will be separately docketed giving Miller further instructions on this choice.

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**